Mr. Justice Merrick
delivered the opinion of the court.
This was an action to recover damages for an injury to an employee in the machi ne shop of the railroad company, resulting, as he claimed, from defective machinery and want of proper advice on the part of the railroad company, of the *153 dangers attendant upon the operation of the machinery in question.
There were twenty exceptions taken at the trial of this case; first, to the refusal of the court to take the case from the jury at the close of the plaintiff's case; second, to the refusal of the court to take the case from the jury at the close of all the testimony on both sides; and then eighteen different exceptions upon prayers, suggesting various minute subdivisions of fact and theory with regard to the proper application of the law and the evidence in the case.
In this class of cases the attempt is constantly made to take away the case from the jury, arising from the natural impulse of counsel to avoid, if possible, the influence of human sympathies in favor of misfortune, and to avoid, too, the operation upon their minds of the law of inherent justice, differing from the rule of the common law in this: natural justice suggests, where the misfortune has occurred through a common fault, that the loss should be shared by both parties who contribute to that loss or misfortune;, whereas, the doctrine of the common law is antagonistic to the civil law, and says that where there has been a negligent contribution to the misfortune on the part of the plaintiff, he shall have no redress at the hands of the defendant.
The outline facts in the case are, that the plaintiff was employed in the machine shop of the defendant in Georgetown, and while attempting to put a belt over some pulleys, which were connected with the machinery of the shop, the belt slipped by reason of some defect in the machinery or some accident, and his arm was destroyed.
The rules of law applicable to cases of that sort have been well defined and settled so far as the Supreme Court of the United States is concerned, although there has been very great conflict of opinion in the different State courts (and, indeed, in the courts of England, until they were remedied and modified by act of Parliament) as to the extent of the liability of an employer for any misfortune growing out of an act of negligence in respect of machinery or anything else on the part of another person who was employed by the same *154 employer. But the Supreme Court has relieved us of difficulty on the subject, and in the very latest case, decided only four months ago, it has announced that the.employee who is charged with the duty of working machinery with another employee is not a co-employee, in such a sense as to discharge the employer from responsibility for any injury to one of them which happens through the defect of the machinery, although that defect may have been brought about by the negligence of the other employee. The extent of the responsibility is defined by the Supreme Court in the case of Northern Pacific R. R. Co. vs. Herbert, 116 U. S., 652, in these words:
“ The same considerations which render him (that is the employer) responsible in such cases for the safe transportation of passengers and property, should also impose upon him an equal responsibility to his employees, so far as their safety depends upon the character and condition of the machinery and appliances used in the transportation. Where the employee is not guilty of contributory negligence, no irresponsibility should be admitted for an injury to him caused by the defective condition of the machinery and instruments with which he is required to work, except it could not have been known or guarded against by proper care and vigilance on the part of his employer.”
And then again at the bottom of page 65B of the same opinion, there is another passage desirable to quote in connection with this case.
“In Beeson vs. Green Mountain Gold Mining Co., 57 Cal., 20, the defendant, a corporation engaged in quartz mining, appointed a superintendent to supervise and manage its mining operations, with authority to employ and discharge laborers at the mine. One of the laborers thus engaged lost his life in a fire, which originated from a defective pipe, put up by a tinner under the supervision of the superintendent, and connected with the engine used to raise ore and take water from the mine. It did not appear that the deceased knew or had reason to know of the defect. In an action by his widow for damages in consequence of his death, it was held against the contention of the company, that the superin *155 tendent was not a fellow-employee of the deceased in the sense indicated by the statute; that, for the purposes of managing the business and determining what machinery should be used' and how placed, he was the representative of the company, and that the deceased was not bound to know whether a defect existed in the machinery and appliances not within his view, but had a right to rely upon the implied agreement of the company that the pipe was properly placed and constructed. It was also held that the tinner, in performing his share o the work, was not a fellow-servant of the deceased; that, as his work was done under the direction and supervision of the superintendent, it was the same as if done by the superintendent in person.”
Thus the Supreme Court of the United States has defined, with great accuracy and with proper strictness, the limits of the responsibility of the employer with respect to machinery, and with respect to his responsibility for his employees in regard to the performance of their duty towards other employees, so far as the sufficiency of the machinery and the exemption from danger by reason of its use is concerned.
This being the law, and the facts of this case being that the plaintiff was injured hy the accidental catching of his arm in a belt which he was endeavoring to put on, and there being evidence tending to show that he knew nothing whatever of the belting having been previously and perhaps imperfectly repaired, and also that the machinery was defective, and that in other parts of the machine shop provisions were made to guard against just such accidents by an arrangement which dispensed with the intervention of the person and allowed the adjustment, the gearing and ungearing of such belts, to be made by machinery, so that the man did not come in contact with it at all, it was proper that the whole matter should be submitted to the jury, both as to the sufficiency of the machinery, the care which had been used with reference to it, and the knowledge or want of knowledge on the part of the plaintiff, of the danger connected with the employment which he undertook.
*156 Under these circumstances, it was quite impossible that the court could take away from the jury the inquiry into the facts, to wit: the sufficiency of the machinery for the purpose, and the knowledge on the part of the plaintiff, of the dangers connected with it, and of the performance of the duty of the employer to apprise him of whatever dangers might he latent, or even patent, but beyond the reach of his observation with respect to the employment which he undertook.
That being so, I say the court could not have done otherwise than to remit the whole case to the jury, and it was impossible in such a state of facts to take away from their consideration those mixed questions with regard to which no precise rule can he applied by which to measure them in the particular instance.
After the close of the testimony there were eighteen íd- • structions applied for, hut it is not the duty of this court to go into a minute criticism upon them all. It is sufficient if we find that although some of the propositions which, standing by themselves, may be good law, were rejected, there was enough given to the jury to cover all the law of the case. This was not only all that the party had a right to demand, but all that the court should have done; and it is no ground of error to reject a good and appropriate prayer, provided the law of that prayer be already sufficiently presented to the jury in other parts of the instructions which may be given.
And we may be allowed to say here, in view of the multiplicity of the prayers and exceptions taken in this case, that it is a serious vice to allow a greater number of instructions to be given to a jury about these matters of diligence on the one hand and negligence on the other, than are necessary for a full understanding of the case. It tends to darken rather than enlighten the judgment of the jury.
The only questions to he presented for the consideration of the jury in this case were, in the first place, whether the machinery was at all defective; if defective, whether the plaintiff had knowledge of it and whether the employer had *157 reason to suppose that he had knowledge of it; and lastly, whether there was contributory negligence by the plaintiff, assuming that there was a defect in the machinery which ought to have been obviated. With regard to all those matters, the court granted the first, second and third prayers which were presented by the defendant and which contained all the law to which the defendant was fairly entitled upon the whole evidence. The fourth instruction, which was voluntarily given by the court, superadded to the others, was the subject of criticism on the part of the defendant. But when that prayer comes to be considered, so far from its being obnoxious to the objection that it takes away any right from the defendant, it is apparent that it gives it perhaps more than it was entitled to at the hands of the court. That prayer is in these words:
“Tf the jury find from the evidence that after he was employed by the defendant, the plaintiff voluntarily and without being required so to do, attended to the belt, and habitually, and with the knowledge of defendant’s officers, placed the same in position without accident, and his course of conduct in relation thereto was such as to induce the defendant or its officers to believe that he had the requisite skill for that purpose, or that he had willingly assumed the duty of so placing the belt, the defendant was not in default for not having instructed him as to any danger incident to its operation.”
In the light of what the Supreme Court has said with regard to the respective duties of employer and employee, and the obligation to impart notice of any defects which may exist in the machinery to the employee of which he has not been previously advised, it is difficult to conceive what just criticism can be based upon that instruction of the court by a defendant in the case so circumstanced, because it not only says that the employer shall be exempt if he has reason to believe, from the condition of the party, that he had the requisite skill for that purpose, but it also says that if he willingly assumed and voluntarily undertook to do the thing, then the defendant was not in default for not having *158 instructed plaintiff about any danger incident to the operation.
With these four instructions, therefore, it seems to us that there was no occasion for the court to go any further, and that no objection could be taken if the court had stopped precisely at that point.
There are certain other objections taken by the defendant to the modification of certain of its prayers, only three of which we will notice, the eleventh, the twelfth, and the thirteenth.
By the eleventh the defendant prayed the court to instruct the jury that if they should find from the evidence that the plaintiff, for the period of ten, twelve or fifteen months, habitually put the belt in question upon the pulley, he must be held to be fully acquainted with the danger which attended the performance of that duty; and that if, after recognizing such danger, or, if, after having a sufficient opportunity to ascertain whatever danger attended the performance of such duty, etc., then the company was not responsible.
The court modified the proposition in this way: Instead of saying that he (plaintiff) must be conclusively held to be acquainted with the danger, it said that these were facts tending to prove, and from which the jury might infer, that he was fully acquainted with the danger, and that he had sufficient opportunity to ascertain and reason to know whatever danger there was;, and if they so found, then he could not recover. Now that is precisely within the line of what the Supreme Court has said with regard to the liability of the employer and the employee. Instead of ruling, as a matter of conclusive law, that he was chargeable actually with knowledge under these circumstances, the court left it to the jury to determine, and said that these facts thus recited in the prayer were evidence of the fact, but they were not so conclusive and arbitrary evidence of it as to make it a rule of law, so that it should come from the court with authority; but the facts were to be left, under the circumstances, to the jury to judge of the weight of them and *159 of the extent of the knowledge thus acquired, and that these facts were competent to impute knowledge, provided they were not qualified in the minds of the jury by other circumstances.
So with regard to the twelfth instruction, which was:
“If the jury shall find from the evidence that on the morning of the accident the plaintiff undertook to adjust and to put the belt on the pulley and failed, and that he then called the engineer to his assistance, and that the engineer after making an effort to put on the belt, started back to his engine room and told the plaintiff to go up and put on the belt, and that he would slow down the engine, and that the plaintiff, without waiting for the engine to be slowed down, and without waiting for the engineer to come back or to tell him to go ahead, undertook to put on the belt and was injured, he cannot recover.”
This was a demand of the court to decide that these facts, as matter of law, created an exemption from liability on the part of the defendant. The court qualified the prayer in this way (and surely, in the light of the numerous authorities, no one can question the propriety of the qualification), that if he, knowing these facts, or having reason, from his experience, to believe that it was necessary to the safety of the operation, then the plaintiff was not entitled to recover'.
So with regard to the thirteenth prayer, which is in these words:
“ If the jury shall find from the evidence that, immediately before the accident, the plaintiff attempted to put the belt on the pulley and failed, and that he then called upon the engineer to assist him, and that the engineer tried to put the belt on the pulley and also failed, and that the engineer thereupon told the plaintiff to hold up or to wait until the engineer immediately went and shut off the steam from the engine, and that before the speed of the machinery and pulley was sufficiently diminished, the plaintiff attempted to put the belt on the pulley and was injured, he cannot recover.”
There again, just as in the preceding prayer, the defend *160 ant sought to obtain from the court a ruling that the enumerated facts constituted negligence on his part, so that he was absolutely precluded. The court qualified it only with this provision: “Although knowing or having reason, from his experience, to know the necessity of waiting therefor.”
The court said that if he knew or had reason to know the necessity of waiting for the slowing down of the engine, and then, with that knowledge, either direct or imputed, he rashly threw himself into danger, he must take the consequences of it. As a matter of law, the court could not say that the mere call of the engineer to him to wait, imputed to him information of a danger, and threw upon him the whole responsibility, but left it to the jury to determine, from all the circumstances, whether or not the language of the engineer was a sufficient warning of danger; and we think the court was entirely correct in submitting to the jury whether those words from the engineer did impart to him a sufficient warning so as to make him responsible thereafter for the consequences which might happen.
None of the other prayers seem to require comment. They are just in the line of the imperfections which have already been noted, and they were rightfully refused in tobo or qualified in a manner similar to the qualifications which I have just adverted to.
Under all the circumstances of the case, the court is of the opinion that no error was committed to the detriment of the defendant in this case; but if there was any, it was in too great an indulgence and relaxation of the law in its favor.
The judgment below must stand.